**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CR-23-397-F |
| | ) | |
| JOHN NEDZA, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT JOHN NEDZA, M.D.'S
MOTION TO DISMISS CERTAIN COUNTS
IN THE INDICTMENT AND MOTION TO ELECT**

John Nedza, M.D., by and through the undersigned counsel, respectfully requests

pursuant to Rule 12(b)(3)(B)(ii) of the Federal Rules of Criminal Procedure that the Court

dismiss the multiplicitous counts in the Indictment, or, in the alternative, that the Court

compel the government to elect between multiplicitous counts before trial. The Indictment

charges 18 counts in violation of 21 U.S.C. § 843(a)(3), which makes it a crime for any

person to knowingly or intentionally "acquire or obtain possession of a controlled

dangerous substance by misrepresentation, fraud, forgery, deception, or subterfuge." But

this statute is ambiguous as to whether Congress intended to punish persons for obtaining

multiple types of controlled substances; the rule of lenity thus precludes the government

from prosecuting such charges.

**Background**

Dr. John Nedza (34) is a devoted husband, a father of two young children, and a

highly regarded anesthesiologist at the University of Oklahoma Medical Center. And like

many other healthcare professionals throughout the country, Dr. Nedza has a history of substance abuse. Dr. Nedza, however, has confronted this abuse head on: In April 2022, he voluntarily entered a three-month in-patient residential treatment program for physicians, successfully completing the program in July 2022 and entering into a five-year contract with the Oklahoma Health Professionals Program ("OHPP"). OHPP, which reports to the Oklahoma medical licensure board, is an outreach program that supports and monitors Oklahoma healthcare professionals who have experienced substance-abuse challenges. Through OHPP, Dr. Nedza participates in recovery meetings four times per week and undergoes regular drug testing. Dr. Nedza's efforts and the support of his family, colleagues, and OHPP have helped him remain sober: As of December 2023, twenty months after entering his in-patient treatment, Dr. Nedza has not had one instance of relapse.

In March 2023, with full knowledge of Dr. Nedza's history and steps toward recovery, Dr. Nedza was hired as an anesthesiologist by the University of Oklahoma Medical Center. On top of his responsibilities as a practicing anesthesiologist, Dr. Nedza oversees the Substance Abuse Curriculum for OU residency students, where he is open about his past struggles and seeks to help others avoid a path of addiction. But seven months into his role at OU Medical Center, and after a demonstrated record of sobriety and contributions through the Substance Abuse Curriculum, Dr. Nedza was indicted in the Western District of Oklahoma on eighteen counts of obtaining controlled substances in violation of 21 U.S.C. § 843(a)(3). The Indictment charges violations of § 843(a)(3) for actions that allegedly occurred on four days in March 2022, the month prior to Dr. Nedza's

2

voluntary enrollment in the in-patient treatment program. Now, unlike many physicians who have struggled with substance abuse and successfully reentered the medical profession after recovery, Dr. Nedza faces the loss of his medical license and an end to his career in medicine.[1]

### Argument and Authority

A defendant may file a pretrial motion to dismiss multiplicitous counts in an indictment. FED. R. CRIM. P. 12(b)(3)(B)(ii). "Multiplicity refers to multiple counts of an indictment which cover the same criminal behavior," *United States v. Benoit*, 713 F.3d 1, 16 (10th Cir. 2013), and "[a]n indictment is multiplicitous if it charges a single offense in more than one count," *United States v. Haddock*, 956 F.2d 1534, 1546 (10th Cir. 1992). The test is "whether the individual acts [alleged in the counts at issue] are prohibited, or the course of [conduct] which they constitute." *United States v. McCullough*, 457 F.3d 1150, 1162 (10th Cir. 2006) (internal quotations and citations omitted). "If the former, then each act is punishable separately. If the latter, there can be but one penalty." *Id.* (internal quotations and citations omitted).

When, as here, an indictment charges multiple violations of the same statute, "the question is whether the facts underlying each count were intended by Congress to constitute separate 'units' of prosecution." *United States v. Elliott*, 937 F.3d 1310, 1313 (10th Cir. 2019). The "unit of prosecution" is "the minimum amount of activity a defendant must undertake, what he must do, to commit each new and independent violation of a criminal

---

[1] *See* OKLA. STAT. tit. 59, § 513(A)(3) ("Upon proof of a felony conviction by the courts, the Board shall revoke the physician's license.").

statute." *Id.* (quoting *United States v. Rentz*, 777 F.3d 1105, 1109 (10th Cir. 2015) (en banc)). Defining the unit of prosecution is "a matter of statutory interpretation," and if the usual tools of statutory interpretation leave a "grievous ambiguity or uncertainty" about the statute, courts "employ the rule of lenity"[2] and are "urged against turning a single transaction into several offenses."[3]

A plain reading of 21 U.S.C. § 843(a)(3), in context with its structure and in relation to other statutes, shows that Congress did not intend to impose separate punishments for obtaining multiple types of controlled substances. Passed as part of the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the "Act"), § 843(a)(3) provides that "[i]t shall be unlawful for any person knowingly or intentionally . . . to acquire or obtain possession of a controlled substance by misrepresentation, fraud, forgery, deception, or subterfuge." Though the statute prohibits obtaining possession of "a controlled substance," Congress has shown—in another statute passed with § 843(a)(3)—that it knows how to provide for distinct punishments for possessing multiple controlled substances. Section 841(a) criminalizes "manufactur[ing], distribut[ing], or dispens[ing], or possess[ing] with intent to manufacture, distribute, or dispense, a controlled substance."[4] But in contrast to § 843(a)(3), the penalty provisions for § 841(a) contain specific punishments depending on substance type and quantity.[5] So, although § 841(a) contains language similar to §

---

[2] *Elliott*, 937 F.3d at 1313.

[3] *United States v. Maldonado-Passage*, 56 F.4th 830, 839 (10th Cir. 2022).

[4] *See* 21 U.S.C. § 841(a).

[5] *See id.* § 841(b). Most circuits do not have a pattern jury instruction for a § 843(a)(3) offense, but the Eighth Circuit's instruction contemplates multiple substances for a single

843(a)(3) (*i.e.*, "a controlled substance"), § 841(a)'s tailored penalty provisions demonstrate Congress's intent to punish possession of different controlled substances as separate offenses. [6] Substance- and quantity-specific penalties are not present in § 843(a)(3), [7] which shows that Congress did not intend to treat different controlled substances as separate offenses under this statute.

Congress had good reason to provide for distinct punishments in the § 841(a) context as opposed to the § 843(a)(3) context. Unlike Section § 843(a)(3), which criminalizes *obtaining* a controlled substance through certain prohibited means (*e.g.*, lying to a physician to receive drugs for personal consumption), § 841(a) targets *trafficking* of controlled substances to others. Further, Congress's stated purpose in passing the Act was "to deal in a comprehensive fashion with the growing menace of drug abuse in the United

---

offense. *Compare* Pattern Crim. Jury Instr. 10th Cir. 2.85 (2023) (requiring jury instruction for § 841(a)(1) to "name controlled *substance*" and prompting the jury to determine "the amount of the controlled *substance*") (emphasis added) *with* Pattern Crim. Jury Instr. 8th Cir. 6.21.843A (2023) (for a § 843(a)(3) offense, not requiring the jury to find that the defendant obtained just one controlled substance and providing instruction that "[name of *substance(s)*] is a controlled substance").

[6] *See United States v. Richardson*, 86 F.3d 1537, 1553 (10th Cir. 1996) (concluding that "Congress intended to treat different controlled substances [under section 841(a)] as separate offenses" in part because "the penalty provisions for section 841(a) distinguish between controlled substances"); *United States v. Davis*, 656 F.2d 153, 159 (5th Cir.1981) ("When Congress set *penalties* for possession of 'a controlled substance,' it intended to permit trial courts to penalize possession of 'each' controlled substance.") (emphasis added).

[7] *See* 21 U.S.C. § 843(d).

5

States."[8] The Act thus provided for harsher penalties for more severe violations[9] (*e.g*, by allowing distinct and potentially consecutive punishments for trafficking multiple controlled substances) and lighter penalties for those obtaining controlled substances that were not for trafficking (*i.e.*, for personal use).[10] Today, Congress has further distinguished between substance type and quantity in § 841(a)'s penalty provisions,[11] whereas § 843(a)(3)'s penalty provision remains indifferent to these factors—for § 843(a) purposes, any types or quantities of controlled substances will do.[12]

Informed by its structure and purpose, and when considered in relation to § 841(a), a plain reading of § 843(a)(3) and its penalty provision show that Congress did not intend for obtaining multiple types of substances to constitute separate units of prosecution.[13] At the very least, however, there is "grievous ambiguity" as to § 843(a)(3)'s unit of

---

[8] H.R. Rep. No. 91-1444, 91st Cong., 2d Sess., reprinted in (1970) U.S. Code Cong. & Ad. News 4566, 4567.

[9] *See id.* at 4575–76 ("[T]he illegal traffic in drugs should be attacked with the full power of the federal government. The price for participation in this traffic should be prohibitive. It should be made too dangerous to be attractive. . . . [M]anufacture, sale, or other distribution of controlled drugs will carry penalties which vary, depending upon the danger of the drugs involved.")

[10] *See id.* at 4575 ("[T]he individual abuser should be rehabilitated. every possible effort should be exerted by all governments—federal, state, and local—and by every community toward this end.").

[11] *See, e.g.*, 21 U.S.C. §§ 841(b)(1)(A)(i)–(viii).

[12] The United States Sentencing Guidelines further demonstrate that § 843(a)(3) does not separately punish obtaining possession of multiple controlled substances. *Compare* U.S.S.G. § 2D1.1 (setting offense levels based on drug types and quantities), *with* U.S.S.G. § 2D2.2 ("Base Offense Level: 8").

[13] *See Maldonado-Passage*, 56 F.4th at 840 (in unit-of-prosecution analysis, examining a statute's text, structure, and purpose to determine Congress's intent).

prosecution because "[t]he plain text of the statute itself . . . does not clearly define the appropriate unit of prosecution." *United States v. Elliott*, 937 F.3d 1310, 1314 (10th Cir. 2019). And "[w]hen Congress leaves to the Judiciary the task of imputing to Congress an undeclared will, the ambiguity should be resolved in favor of lenity." *Bell v. United States*, 349 U.S. 81, 84 (1955).

Dr. Nedza asks the Court, applying the rule of lenity, to find that Counts 2 through 18 are multiplicitous and either to dismiss them or require the government to elect one Count before trial. In the alternative, Dr. Nedza asks the Court to find that counts charged for alleged conduct occurring on the same day are multiplicitous: Counts 1 through 6 allege withdrawals on March 1, 2022, occurring over two one-to-two-minute intervals and involving three identical medications for just two patients; Counts 7 through 9 allege withdrawals on March 3, 2022, occurring over a single two-minute interval for one patient; Counts 10 through 13 allege conduct on March 4, 2022, occurring over two one-minute intervals for two patients and involving just two medications; and Counts 14 through 18 allege conduct on March 13, 2022, occurring over two minute-long intervals for just one patient and involving an identical medication.

If the Court declines to dismiss the multiplicitous counts before trial, the government should be compelled to elect one count for each day listed in the Indictment.[14] Otherwise, going to trial on so many multiplicitous counts would "falsely suggest to [the] jury that [Dr. Nedza] has committed not one but several crimes," as well as present a

---

[14] And at the very least, Dr. Nedza asks the Court to merge, dismiss, or compel the government to elect between the counts involving the same substances on the same days.

significant risk "that the jury will be diverted from a careful analysis of the conduct at issue" and that it "will reach a compromise verdict or assume [Dr. Nedza] is guilty on at least some of the charges." *See United States v. Johnson*, 130 F.3d 1420, 1426 (10th Cir. 1997) (internal quotations omitted). The risk would be lower, perhaps, if the case involved just one or two multiplicitous counts—but here we are confronted with over a *dozen* multiplicitous counts. This not only heightens the prejudice to Dr. Nedza, but it also risks confusing the jury and wasting judicial resources given the technical, scientific nature of the numerous alleged crimes.

## Conclusion

The government is entitled, of course, to determine when and how to charge a person with a crime if there is probable cause that he committed it. Still, we are here because the government decided to bring eighteen felony charges against Dr. Nedza (who has no prior charges or convictions) after he had admitted to his substance-abuse challenges, voluntarily entered a three-month in-patient treatment program, entered into a five-year contract with OHPP to receive weekly counseling and regular drug tests, was hired at OU Medical Center to practice anesthesiology and lead the Substance Abuse Curriculum for medical residents, and demonstrated a perfect record of sobriety since April 2022. Not only do the September 2023 charges against Dr. Nedza seek to derail his progress and future contributions to the medical profession and Oklahoma patients, but the charges also are constitutionally

deficient[15] and multiplicitous. Dr. Nedza thus respectfully requests that the Court dismiss the multiplicitous counts or compel the government to elect between counts before trial.

<div style="margin-left: 50%;">

Respectfully Submitted,

Attorney for John Nedza, M.D.

*s/* Jeffery D. Trevillion, Jr.
Jeffery D. Trevillion, Jr., OBA #21851
Brian Self, OBA #33263
CROWE & DUNLEVY, P.C.
324 North Robinson Avenue, Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
jeff.trevillion@crowedunlevy.com
brian.self@crowedunlevy.com
**COUNSEL FOR DEFENDANT**

</div>

---

[15] See the related motion to dismiss filed concurrently with this motion.

## CERTIFICATE OF SERVICE

I hereby certify that on December 29, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic filing to Thomas Snyder, Assistant United States Attorney.

*s/* Jeffery D. Trevillion, Jr.
Jeffery D. Trevillion, Jr.
Attorney for Defendant

10

5494072.v1